<u>IN THE UNITED STATES DISTRICT COURT FOR</u>

<u>THE DISTRICT OF NEW MEXICO</u>

**TAMMY JARAMILLO,**

     **Plaintiff,**

**v.**                                  **No. D-820-CV-2021-00281**

**TAOS COUNTY, JERRY? LUPE MARTINEZ
RANDY AUTIO, TOM BLANKENHORN**

     **Defendants**

**<u>COMPLAINT FOR VIOLATIONS OF THE NMWPA, NMHRA, U.S.C. § 1983, U.S.C. §
1985, DEFAMATION, ABUSE OF PROCESS, MALICIOUS PROSECUTION, BREACH
OF CONFIDENCE, CIVIL CONSPIRACY, AND IPRA</u>**

**I.**       **<u>Nature of the Action</u>**

COMES NOW Tammy Jaramillo, Plaintiff, by and through her attorney of record,

Heather C. Burke to file this Complaint For Violations Of The NMWPA, NMHRA, U.S.C. §

1983, U.S.C. § 1985, Defamation, Abuse Of Process, Malicious Prosecution, Breach Of

Confidence, Civil Conspiracy, And IPRA.

**II.**       **<u>Parties</u>**

1.  Ms. Tammy Jaramillo is a United States Citizen and resident of New Mexico.

2.  Defendants live and/or do business in New Mexico

### III.   Jurisdiction

3.   Jurisdiction of this Court is invoked pursuant to 28 U.S.C. " 1331 and 1343,

4.   42 U.S.C. " 1983 and 1988, 42 U.S.C. ' 2000d, and common law. Supplemental

jurisdiction over the pendant state law claims is proper pursuant to 28 U.S.C. '1367(a)

and common law The Court has supplemental jurisdiction to hear New Mexico State

Law claims under Article VI, Section 13 of the New Mexico Constitution.

5.   The Court has subject matter and personal jurisdiction over Defendants because it

was at all times herein alleged conducting business in New Mexico.

6.   Defendants took the unlawful, retaliatory, and/or tortious acts herein alleged within

this Judicial District and/or took wrongful acts that had effects in New Mexico

7.   Venue is appropriate in this district.

### IV.   Exhaustion of Administrative Procedures

8.   Plaintiff timely filed a charge of discrimination with the New Mexico Human Rights

Bureau, which was cross filed with the EEOC.  She satisfied all administrative

requirements and received an order of non-determination on August 20, 2021, which

allows her 90 days to file her complaint in state district court.

### V.   Factual Background to This Litigation

9.   Tammy Jaramillo was hired by Defendants on April 1, 2013 as the Indigent Fund

Coordinator. (Later renamed Health Care Assistance Program ("HCAP") Director)

10. Brent Jaramillo was promoted from HR Director to the Deputy County Manager in April 2014.

11. Six years later, Ms. Jaramillo's spouse, Brent Jaramillo was offered the position of Taos County Manager on February 19, 2021.  Mr. Jaramillo had not applied for this position, nor was he interviewed prior to being offered it.

12. When Brent Jaramillo was offered the position, the County Commission discussed and decided that Brent Jaramillo would be removed from Ms. Jaramillo's chain of command and that the Deputy Manager would be responsible for overseeing Ms. Jaramillo's employment.

13. This discussion was not on the meeting agenda.

14. Brent Jaramillo was hired as Taos County Manager on March 1, 2019.

15. Ms. Jaramillo is also a member of the Questa School Board

16. On October 22, 2019, in response to meritless allegations involving the Questa School Board, Defendant Martinez issued a letter to Ms. Jaramillo which imposed negative and humiliating requirements on Plaintiff. Defendant Martinez claimed that these were needed to "provide safeguards to avoid allegations of favoritism or impropriety pending the outcome of the investigation."

17. Defendant Martinez required Plaintiff to "please include my approval on the following: all financial matters related to revenue and expenditures of the HCAP Fund; any deviation from your normal work schedule; upcoming meetings that you plan to attend; and, any programmatic changes being proposed. In addition, please copy me on all e-mails and communications with staff, the public and program participants."

18. She also stated "As your direct supervisor, I would appreciate it if you would communicate directly with me, any and all matter related to your role within Taos County." This was explained to Plaintiff that Defendant Martinez did not want Plaintiff to speak with the Commission any longer.

19. As the allegations against Plaintiff had no merit, nothing came of them.

20. Defendant Martinez was not responsive to any of Ms. Jaramillo's concerns from this point forward.

21. In November of 2019, Ms. Jaramillo advised Defendant Martinez of possible fraud of a contractor that was invoicing the County for services that was not allowable under that Contract. She also reminded Defendant Martinez of issues of eligibility of the contractor from their past contract.

22. Defendant Martinez stated that the County should still pay this contractor.

23. Ms. Jaramillo sought the legal advice of Defendant Autio, who agreed that the contractor needed to be licensed, and stated that he would "negotiate" payment of this contract.

24. Ms. Jaramillo sought assistance from HR for help dealing with Defendant Martinez's lack of interest in her department and her lack of response and guidance when Ms. Jaramillo asked for it.  HR Director Jeanna Elam told Ms. Jaramillo that she had been told not to get involved.

25. On January 10, 2020, Ms. Jaramillo received an email regarding a Commission Retreat, Defendant Martinez was Cc on this email.

26. Another email "Notice of Retreat Agenda" was sent to Defendant Martinez and Plaintiff was CC'd on that email.

27. On January 14, 2020, Ms. Jaramillo presented to the Commission about her Health Care Assistance Program.  As was common, Defendant Martinez walked out of this presentation and did not return.

28. Ms. Jaramillo attempted to raise concerns with the Commission about the problems she was having getting Defendant Martinez to respond to and support her department.

29. Defendant Blankenhorn sternly told Ms. Jaramillo that she just needed to "work it out" and "make it work" with Defendant Martinez.

30. In March 2020, Ms. De La Roche, started to create obstacles for HCAP staff to have access to detainees, which resulted in HCAP staff not meeting with all detainees upon booking to determine eligibility.

31. Normally, HCAP's Outreach Specialist would meet with detainees that have been booked, to determine eligibility for service with HCAP Case Manager as while as to assist with payment for medical services.

32. HCAP Eligibility requirements are based on income, residency, resources, and identity.  As Detainees do not have access to this information, detainees would sign a notarized statement for income, residency, resources and for identity the Detention Center would provide the booking sheet to HCAP to use to process these cases.

33. On March 23, 2020, Ms. Jaramillo sent an email to Defendant Martinez requesting clear direction and assistance in regards to Detention, and asked for a meeting to address HCAP providing services.

34. On March 24, 2020, Defendant Martinez responds to Ms. Jaramillo on March 23, 2020, requesting Ms. Jaramillo to draft a simple operating procedure that would work for HCAP.

35. On March 27, 2020, Ms. Jaramillo reported to her Supervisor Lupe Martinez of "Drugs coming into Detention," a detainee stated to the Case Manager that a Detention Officer was going to bring drugs in on the weekend. A meeting with Brent Jaramillo, Ms. De La Roche, Defendant Martinez, and Ms. Jaramillo was held to discuss this.

36. After the meeting, Ms. Martinez expressed her frustration that Brent Jaramillo had not fired Ms. De La Roche. Ms. Martinez, stated she has had several conversations with Mr. Jaramillo that he needs to fire her. Ms. Martinez was very forthcoming with her thoughts regarding Ms. De La Roche stating, Ms. De La Roche was not a fit for Taos County, that Ms. De La Roche wanted to just come in and change everything without consulting with management, and she should not be here.

37. Defendant Martinez told Ms. Jaramillo that she needed to stand her ground with Ms. De La Roche. Defendant Martinez went on to say Ms. De La Roche just can't accuse Plaintiff of not following made-up policies without proof.

38. On April 1, 2020, Plaintiff filed a formal complaint with Taos County's Human Resources department via email and Cc Defendant Martinez of a violation of HIPAA because the detention center was keeping records related screening for Covid including names, body temperature, blood oxygen, pulse, respiration and blood pressure. Their form stated anyone refusing this screening would not be admitted to the facility. Plaintiff asked for this to be investigated to determine who was keeping these records, how they were being kept and what was being done with the information collected this way.

39. Ms. Jaramillo also sent an email on April 1, 2020 to Defendant Martinez reporting what she believed was a hostile environment created by Ms. De La Roche.

40. In April 2020, CorrHeatlh Submitted to HCAP the monthly medical services provided to Taos County detainees for the month of March 2020.

41. On April 8, 2020 Ms. Jaramillo reported to Defendant Martinez a "wrongful release of a detainee." A detainee got released on 3/24/20 who had a "NO BOND HOLD" at the time of release.

42. On April 13, 2020, Ms. Jaramillo reported to Defendant Martinez that Ms. De La Roche was escorting detainees into HCAP without face masks in violation of state public health orders and policy, thereby potentially exposing staff to Covid.

43. On or around April 16, 2020, Ms. Jaramillo was Cc on an email from Ms. De La Roche stating that booking sheets will not be produced without a release form signed by the detainee.

44. On around April 17, 2020, Ms. Jaramillo spoke with Defendant. Martinez regarding De La Roche's April 16, 2020 directive regarding booking sheets. Ms. Jaramillo and Ms. Martinez discussed that a release of information is not needed due to inter-department collaboration of utilization of funds between the two departments.

45. On April 20, 2020, Ms. Jaramillo send an email to Case Manager with Defendant Martinez Cc'ed stating that at this time, HCAP will continue to request the booking sheet without submitting a release of information form.

46. On around April 27, 2020, Ms. Jaramillo and Defendant Martinez discussed not approving payment for March, until they both met with De La Roche to work out the issues with the booking sheets.

47.  On May 2, 2020, Ms. Jaramillo expressed concerns to Defendant Martinez that detention staff and detainees were not being provided PPE.

48. Ms. De la Roche was placed on leave on or around May 5, 2020.

49. Defendant Maestas was retained to represent Ms. De La Roche, and began negotiations with Defendant Autio for a settlement.

50. On May 11, 2020 Ms. Jaramillo sent another email regarding the hostile environment being created by Ms. De La Roche and asked what had resulted from her HIPAA violation concern.

51. That same day, Ms. Jaramillo was placed on administrative leave.   Plaintiff was given a vague letter explain that she was being put on leave.  Defendants did not initiate an investigation, and Ms. Jaramillo was verbally told it could take a long time to resolve.

52. Ms. Jaramillo heard nothing from Defendants and had no idea why she was on administrative leave.

53. On information and belief, by May 13, discussions of offers and counter offers by Defendant Maestas on behalf of Ms. De La Roche had already been occuring.

54. On May 13, 2020 at 12:58pm Defendant Maestas exchanged texts with Defendant Hogrefe stating, "Take a look at NMSA 30-24-1D. That looks solid." And "NMSA 30-41-2A looks promising."

55. Defendant Maestaas then unethically discusses County settlement offers for De La Roche with Defendant Hogrefe in another text at 14:27 saying "There is a possibility that this could fall under 30-24-3., they offered her 2 months pay is she would…"

56. Defendant Hogrefe discussing alleged criminal violations by Defendant County with Defendant Maestas is an improper conflict of interest.

57. Defendant Hogrefe texts a reply, time stamp missing, but still on May 13,  to Defendant Maestas that he "talked to Marvin and directed he get it prepared to forward to Das for an investigative GJ. Before that happens, I'll get in contact with you."

58. Defendant Maestas responds, "ok, thanks"

59. At 18:36 Defendant Maestas text Defendant Hogrefe "Did an internet search on Tammy Jaramillo. Bribery…. [texts cut off, in IPRA violation.  The following record continues, but may does not appear to be the same text bubble] …information.  I can call him if you want."

60. Defendant Hogrefe answers Defendant Maestas, requesting that Defendant Maestas personally help him investigate Ms. Jaramillo  "And to my knowledge, the Attorney General has that bribery case.  Anything helpful you can find would be apricated sir."

61. Defendant Maestas answers "I will look into it."

62. The following day, May 14 at 9:57 Defendant Maestas texts Defendant Hogrefe "Ellis will talk with you, and he has a report that may help.  AG has not done anything."

63. Defendant County did not provide complete production of the texts between Defendants Hogrefe and Maestas, in violation of IPRA

64. Ms. Jaramillo retained undersigned counsel, who emailed and sent a letter dated June 1, 2020, to the Taos County Commissioners and Defendant Martinez on Plaintiff's behalf, demanding that she either be returned to work, or that the reasons for her

administrative leave be put in writing including a timeline for their intended

investigation so that Ms. Jaramillo would be able to prepare a defense.

65. On June 5, 2020 Plaintiff received a letter "Re: Notice to persons Allegedly Violating

the County Policy Against Workplace Harassment" which stated, for the first time

after 26 days of being on leave, why Ms. Jaramillo was on leave.  It does not mention

what Ms. Jaramillo was specifically accused of, but states that she was allegedly

accused of creating a hostile environment.

66. Defendant Autio told undersigned counsel that Defendant Maestas was angry that the

county was going to do an investigation in the middle of his negotiations for

settlement and that he had threatened publicity if the County went ahead with an

investigation.

67. On information and belief, Defendant Maestas sent an email to Defendants on or

around June 8, telling them that he had allegedly been keeping things confidential and

giving them a deadline of noon to respond to tell him whether things were going to be

adversarial.

68. Forty-three minutes after Defendant Maestas' deadline expired on June 8, 2020, Taos

News reporter John Miller sent an email to Defendant Hogrefe asking "Hi Jerry, Is

the Taos County Sheriff's Office investigating Tammy Jaramillo, county health care

assistance coordinator, for any alleged criminal activity? If so, please send me

confirmation and any related reports that can be released at this time."

69. Defendant Hogrefe responded on June 9, 2020 at 1:09pm "John, There is a matter that

was reported to TCSO that alleges misconduct/extortion Detective Armijo has

apprised DA Montoya of the matter but no action has been taken as of today. Election

Season has kinda put this off the last couple weeks. It is likely that I will ask another agency to assist on this investigation of it goes that way."

70. John Miller told Ms. Jaramillo that Defendant Hogrefe had emailed him to tell him she was under investigation, without mentioning that he had first emailed to ask Hogrefe this information.  This misrepresentation hid the fact that someone had first told John Miller that Plaintiff was allegedly under investigation.

71. On June 11, 2020 the Taos News published a front page new story with the headline "Jail Director, health administrator, under investigation"  This article states that Defendant Autio confirmed that both Plaintiff and De La Roche were under internal investigation and that their investigations were related.

72. The article repeated the information about Ms. Jaramillo that Defendant Hogrefe had stated in his June 9, 2020 email.  However, it adds "Hogrefe said he was unaware of any criminal allegations that have been made against De La Roche."

73. The article goes on to talk about the allegations made against Plaintiff by Ellis Garcia involving the Questa School Board.  There were no merit to these allegations and no charges were brought in relation to these.

74. This article was also published in the Santa Fe New Mexican, on Facebook, and other media outlets.

75. On information and belief, Ellis Garcia is, or has been, a client of Defendant Maestas.

76. On information and belief, Ellis Garcia is the "Ellis" referred to in the May 14, 2020 email between Defendants Hogrefe and Maestas.

77. On June 29, 2020, sent another letter to Defendants, stating that the County had never responded to the first letter, and demanded to know why, nearly 2 months after

Plaintiff had been placed on leave, no investigation had yet commenced and Plaintiff still had no idea what she was even accused of doing.

78. The letter went on to question why Defendants Autio and Hogrefe were speaking to the press about confidential matters and that the resulting news story had fatally tainted any possible investigation at that point.  The letter demanded that the County investigate this breach of confidentiality, defamation and return Plaintiff to work immediately.

79. On Thursday, July 2, 2020, at 4:12pm Defendants emailed Plaintiff to give notice of a scheduled interview with Rick Foley, the investigator retained by Defendants.

80. Plaintiff's interview was scheduled for July 10, 2020.  Despite the pandemic, this interview was scheduled in person.

81. In plaintiff's interview, in violation of public health order, Mr. Foley did not wear a face mask.  Both Plaintiff and her counsel insisted on wearing their face masks.

82. This interview was the first time Ms. Jaramillo was able to have any idea what had been alleged against her.

83. Ms. Jaramillo participated fully in this investigation, and provided notes and emails which explained how things had transpired when they were requested.

84. On September 9, 2020 undersigned counsel asked Defendant Autio for status on the investigation.

85. Defendant Autio responded on September 10, 2020 that he would talk to the investigator and let Ms. Burke know.  That same day, Plaintiff was removed as chairperson of the "Criminal Justice Coordinating Council" (CCJC) because she was still not back to work after 4 months.

86. On September 11, 2020, undersigned counsel sent a letter to Defendant Autio, informing him that Plaintiff had been removed as chairperson of the CCJC on September 10, 2020 because it had been four months that she had been on leave pending investigation.

87. In or around September 2020, Defendant Martinez told a county employee that Ms. Jaramillo would not be returning to work at the County.

88.  On or around September 2020, Defendant Autio told Brent Jaramillo that Brent and Ms. Jaramillo would need to do some "soul searching" because they both could no longer work at the County.

89. Defendant Autio stated that Ms. Jaramillo would need to be the one to leave because her employment hurts Brent Jaramillo and the County.

90. Plaintiff filed her charge of discrimination with the New Mexico Human Rights Bureau on October 20, 2020 and received her notice indicating that Defendants would receive a copy within 10 days.

91. Nine days later, Plaintiff was notified that she needed to appear in person on November 5, 2020 for a meeting in Taos.

92. At this meeting, Defendant Autio began by asking Plaintiff and her counsel what they wanted, as though they had called the meeting.

93. Defendant Autio suggested that Plaintiff could resign, which Plaintiff declined to do.

94. Defendant Autio then terminated Plaintiff's employment with the County stating that they didn't need to have a reason.

95. On June 10, 2020 Plaintiff sent IPRA request #1, requesting inspection of the following documents:

    a.   text messages and emails regarding Ms. Jaramillo and Karen de la Roche from March 1, 2020 through June 10, 2020 by and between the Taos County Sheriff, Sheriff Deputies and/or staff, John Miller of the Taos News, Taos County Attorney, County Manager, Deputy County Manager, Human Resources Director, Karen de la Roche, and the Alan Maestas Law Firm

96. On June 15, 2020, Plaintiff received Defendants response through their legal department assistant, Shannan Brumley, stating that they would need additional time, and would need until June 26, 2020 to produce the requested documents.

97. June 25, 2020, Plaintiff received Defendants 15 day response stating that they needed additional time, and would provide inspection on or before July 17, 2020.

98. This letter also mentions "ongoing criminal investigations" as a reason for needing additional time.

99. As of the date of this filing, Plaintiff has still not received full production of Request #1.

100. On August 2, 2021, Ms. Jaramillo requested IPRA Request #2 in which the following documents under Inspection of Public Records Act:

    a.   Review the Fiscal year 19/20, Fiscal year 20/21, and Fiscal Year 21/22 contract(s), between Taos County Health Care Assistance Program and Taos Whole Health.

    b.   Review Invoices submitted for payment by Taos Whole Health for fiscal year 19/20

c.  Review all documents submitted to Taos County Finance Department for payment for invoices for fiscal year 19/20. Including all submissions and signatures for approval for payment.

d.  Review all documents of payments paid to Taos Whole Health for fiscal year 19/20 contracts

e.  Review incoming and outgoing emails from HCAP Administrative Assistant to Interim HCAP Director Amanda Rael and/or Interim Deputy County Manager regarding all Taos Whole Health in the time frame of May 12, 2020, and August 31, 2020

f.  Review incoming and outgoing emails between Interim HCAP Director and Interim Deputy County Manager Lupe Martinez regarding Taos Whole Health in the time frame of May 12, 2020, and August 31, 2020.

101.  August 3, 2021, Ms. Jaramillo requested IPRA #3

a.  all documents, notes, complaints of criminal investigation conducted by Taos County Sheriff's Office of Tammy M Jaramillo Between July 30, 209, to present

102.  August 5, 2021, Taos County responded to both #2 and #3 (Ms. Anna Martinez), stating additional time needed on or before August 17, 2021.

103.  August 18, 2021, Ms. Jaramillo sent a courtesy email to the County (Ms. Anna Martinez & Ms. Shannan Brumley), inquiring of the County's intentions to provide said documents.

104.  On August 18, 2021, Taos County (Ms. Anna Martinez) responded to Ms. Jaramillo's earlier email of the County's intentions, stating, Taos County staff is still

gathering the information and is requesting an additional week on or before August
25, 2021.

105.    On August 27, at 3:32pm Ms. Brumley first asked for the criminal investigation
file from Marvin Armijo.

106.    On August 27, 2021, Taos County (Ms. Shannan Brumley) emailed at 5pm that
according to the Taos County Sheriff's office in a June 9, 2020 email and recent
correspondence, all documents and notes pertaining to the criminal investigation were
turned over to the District Attorneys office. We are not the custodian of record for all
of the records requested or described above for the office of the District Attorney. We
are forwarding your request to that agency's records custodian by email for response.
To expedite your request, it would be advisable for you to write an additional letter
requesting the records to the proper custodian at your earliest convenience. The email
address for the 8th Judicial District Attorneys Office is 8thDA@da.state.nm.us.

107.    September 22, 2021, Ms. Jaramillo inquired in person regarding said documents.
Ms. Martinez informed Ms. Jaramillo that the information was sent to the Department
Head for the documents.

108.    Ms. Martinez also stated that she had the emails but nothing from finance
department and has sent email after email trying to get the information and that
Shannan Brumley was also trying to assist with getting the information.

109.    On August 17, 2021, Ms. Jaramillo requested IPRA #4:

a.   Review the Fiscal year 16/17, Fiscal year 17/18, and Fiscal Year 18/19
contract(s), between Taos County and EMTZ tracking systems,

b.   Review Invoices submitted for payment by EMTZ tracking systems for fiscal year 16/17 and Fiscal year 17/18.

c.   Review all documents submitted to Taos County Finance Department for payment to EMTZ tracking system for invoices for fiscal year 16/17 and fiscal year 17/18. Including all submissions and signatures for approval for payment.

d.   Review all documents of payments paid to EMTZ for fiscal year 16/17 and fiscal year 17/18 contracts

e.   Review incoming and outgoing correspondence of overpayment, underpayment and/or monies due to either party regarding EMTZ contract with Taos County within the fiscal year 16/17 and fiscal year 17/18.

110.   Defendants did not comply with their response requirements for these requests.

111.   On September 23, 2021 Ms. Jaramillo IPRA Request #5:

a.   Lupe Martinez, Deputy County Manager's leave slips and timesheet for the time frame of July 31, 2021 through Sept 17, 2021.

b.   Taos County Board of Commission agendas from the time frame of April 2020 to present that gave notice to the public of item(s) of discussion of any matter regarding Tammy M Jaramillo in open meeting or in executive session.

112.   On September 27, 2021 Ms. Jaramillo received a 3 day letter from Shannan Brumley about Lupe's Leave Slips(#5a), but states that they will need until October 8, 2021.

113.   On September 27, 2021 Ms. Jaramillo received a 3 day letter from Shannan Brumley stating that Ms. Jaramillo's Board Agenda Request (#5b) was ready to be picked up.

114.     The following day, on his own private law firm letterhead "NM Local

Government Law, LLC" Defendant Autio sent two letters to Plaintiff about IPRA

Request #5 both stating that they needed until October 8, 2021 to produce these

records even though Plaintiff had already been notified that #5b was ready to be

picked up.

115.     On September 29, 2021, more than a month after making request #4, Ms.

Jaramillo received a response from Taos County (Ms. Anna Martinez & Ms. Shannan

Brumley) stating please contact Ms. Martinez to arrange a time for viewing or

reproduction of the records you requested.

116.     On October 1, 2021 – Ms. Jaramillo via email sent Ms. Ann Martinez notification

that the information was not responsive to the entirety of Ms. Jaramillo request and

did not address or explain why Taos County has chosen not to provide the requested

documents and there was four (4) blank pages.

117.     On October 4, 2021, Ms.  Anna Martinez responded to Ms. Jaramillo email of the

first, stating Ms. Martinez forwarded Ms. Jaramillo's request to the Finance

Department for a response to documents not provided and there no blank pages.

118.     On October 22, 2021, Ms. Jaramillo requested IPRA #6:

a.     contract(s) that Taos County had with Rick Foley Investigations within the

fiscal year 19/20 and fiscal year 20/21.  All invoices submitted by contractor

Rick Foley Investigations to Taos County for payment during the timeframe

of July 1, 2020, to October 22, 2021.

119.     On October 25, 2021, Taos County (Ms. Brumley) responded that the County will

require more than the initial their (3) business day to respond.  In fact, and in

accordance the NMSA 1978, section 14-2-10 (1993), the County may need more than the regular (15) days to respond to your request.  As such, the County will further assess your request and will provide you with an update within fifteen (15) days of the County receiving your IPRA request.  Although the County cannot anticipate when the responsive documents will be available at this time, the County will produce them within a reasonable period of time.

120.    To date, Defendants have never allowed inspection of IPRA #5.

121.    Because of the emotional distress and stress caused by Defendants unlawful acts, Plaintiff has suffered numerous physical ailments directly caused by stress, including, but not limited to, shingles outbreaks.

122.    Plaintiff was offered a position with the State of New Mexico in the summer of 2021.  This offer was rescinded directly because of the criminal allegations supposedly pending against Plaintiff and the questions about her character that they implicate.

## COUNT I: VIOLATION OF THE NMWPA

### (Defendant Taos County)

123.    Plaintiff reincorporates and realleges the paragraphs above as though set forth fully herein.

124.    Ms. Jaramillo reported to her Supervisor Lupe Martinez of "fraud by a Provider" that Taos Whole Health had their clients sign a waiver of responsibility for services rendered by a non-licensed provider in the State of New Mexico. This practice of Taos Whole Health was discovered by HCAP staff when conducting a routine audit.

At that time Ms. Jaramillo informed Ms. Martinez that HCAP received invoices for reimbursement for services provided by a non-licensed provider in the State of New Mexico. The contract states that the provider must be licensed in New Mexico.

125.    Ms. Jaramillo reported to her Supervisor Lupe Martinez of a "wrongful release of a detainee" that a detainee got released on 3/24/20 and had a "NO BOND HOLD" at the time of release. It became known to HCAP staff a few days after the release, when the detainee had a scheduled appointment with his attorney and HCAP staff was than notified he was released on 3/24/20.

126.    Ms. Jaramillo reported to her Supervisor Lupe Martinez "unsafe conditions and risking to health and safety of others" that Detention staff did not have access to Personal Protective Equipment PPE (face masks) and/or did not provide PPE (face masks) to staff and/or detainees. Staff and detainees would wear PPE several days or more without detention providing a new face mask.

127.    Ms. Jaramillo reported to her Supervisor Lupe Martinez of "Detention staff not adhering to Conditions of Release prior to release" Ms. Jaramillo reported to her Supervisor Lupe Martinez that Karen De La Roche created a form that allows detainees to decline HCAP Services and instructed her staff to offer this form to detainees. There were releases that occurred that did not adhere to the detainees' condition of Release to see HCAP but allowed detainees to sign a form to decline HCAP Services.

128.    Ms. Jaramillo complained to Defendant Martinez about things which she believed, in good faith, to be against law or policy.

129.    Defendants retaliated against Ms. Jaramillo by placing her on leave with no explanation or end date.

130.    After intervention by her attorney, Defendants conducted a biased and fraudulent investigation over many months.

131.    The outcome of this investigation was based on perjurious testimony by Defendant Martinez and was in clear conflict with records to the contrary.

132.    Defendants retaliated against Ms. Jaramillo by terminating her employment.

133.    As a result of Defendants' unlawful acts, Ms. Jaramillo suffered and continues to suffer, damages.

## COUNT II: VIOLATION OF THE NMHRA

## – Spousal Affiliation Discrimination

### (Defendants Martinez, Blankenhorn, and Autio)

134.    Plaintiff reincorporates and realleges the paragraphs above as though set forth fully herein.

135.    The NMHRA makes it illegal to discriminate against an employee on the basis of "Spousal affiliation."

136.    Ms. Jaramillo is married to County Manager Brent Jaramillo

137.    Plaintiff was terminated from her employment at Taos County because she was married to Brent Jaramillo.

138.    But for her spousal affiliation with Brent Jaramillo, Ms. Jaramillo would still be employed by the County.

139.    Defendants hostile treatment and termination of Ms. Jaramillo was illegal discrimination based on who she was married to.

140.    Defendant Martinez resented her responsibility for Plaintiff, which was assigned to her specifically because of Plaintiff's spousal affiliation.

141.    Plaintiff was given less notice and less due process because of her marriage, and was left on administrative leave for months before knowing what she was accused of.

142.    Defendants immediately scheduled the meeting to terminate Plaintiff after receiving her HRB charge, and then terminated Plaintiff in retaliation for her HRB charge of discrimination.

143.    As a result of Defendants illegal actions, Ms. Jaramillo has suffered, and continues to suffer, damages.


## COUNT III: DEFAMATION

### (Defendants Autio, Maestas, Martinez and Hogrefe)

144.    Plaintiff reincorporates and realleges the paragraphs above as though set forth fully herein.

145.    The amount of time that Defendants took to even begin Plaintiffs workplace investigation gave the appearance that she was guilty.

146.    Alan Maestas gave Defendant Autio until noon on June 8, 2020 to negotiate with him regarding settling Karen De La Roche's claims.

147.    Only 43 minutes after this deadline expired on June 8, 2020 at 12:43pm, Taos News Reporter John Miller sent an email to Defendant Hogrefe asking whether Plaintiff was under investigation.

148.   Defendant Hogrefe confirmed on June 9, 2020 that Plaintiff was allegedly under investigation for misconduct/extortion.

149.   Defendant Hogrefe had been conspiring with Defendant Maestas specifically to find criminal charges to bring against Plaintiff.

150.   On or around June 9, Defendant Autio confirmed that Plaintiff was also under investigation for work related conduct.

151.   On June 11, 2020 Taos News published a news story reporting these allegations

152.   On August X, Plaintiff made an IPRA request for the alleged criminal investigation into her.

153.   Defendant Hogrefe represented in an email that Ms. Jaramillo's work investigation was somehow related to his criminal investigation.

154.   On X, Taos News spontaneously ran a news story on Ms. Jaramillo's criminal investigation, also making the claim that the criminal investigation was related to her workplace investigation.

## COUNT IV: MALICIOUS PROSECUTION

### (Defendants Hogrefe and Maestas)

155.   Plaintiff reincorporates and realleges the paragraphs above as though set forth fully herein.

156.   Defendant Hogrefe is Taos County Sheriff.

157.   Defendant Hogrefe conspired with Alan Maestas with the purpose of digging up criminal allegations against Plaintiff with the purpose of criminal prosecution.

158.    Defendant Hogrefe provided private phone numbers to Alan Maestas of those involved with Plaintiff and her claims.

159.    Defendant Hogrefe alleged to the Taos News that Plaintiff was under investigation for unspecified criminal violations.

160.    Defendant Hogrefe did not have probable cause or reasonable grounds to investigate Plaintiff.

161.    Conspiring in text messages to develop a criminal case against a private citizen is not a legitimate method of conducting police business.

162.    Defendant Hogrefe's investigation was initiated with an improper motivation or purpose.

163.    Just after Plaintiff attempted to IPRA the alleged criminal investigation file from Defendants, Plaintiff was again the subject of a defamatory news story which alleged a still ongoing criminal investigation for Ms. Jaramillo, now allegedly taking place in the 4th district.

164.    It has been 18 months since Defendant Hogrefe conspired with Alan Maestas and at the time of this filing, Plaintiff has not been made aware of what the allegations supposedly are, and she has not been charged with anything, let alone convicted of anything.

165.    Plaintiff has committed no crimes, and there is no evidence to the contrary. Despite this, Defendants have continued to defame and maliciously prosecute Plaintiff for their own illegitimate ends.

166.    As a result of Defendants unlawful acts, Plaintiff suffered, and continues to suffer, damages.

## COUNT V: ABUSE OF PROCESS

### (Defendants Hogrefe, Maestas, and Autio)

167.    Plaintiff reincorporates and realleges the paragraphs above as though set forth

fully herein.

168.    Defendant Hogrefe is Taos County Sheriff.

169.    Defendant Hogrefe conspired with Defendant Maestas to find something to

charge Plaintiff with.

170.    Defendant Hogrefe claims that he had forwarded charges against Plaintiff for an

"investigative GJ"

171.    Defendant Hogrefe agreed communicate status about this alleged criminal

investigation with this private attorney.

172.    It is improper for a Sheriff to communicate with or take direction regarding

criminal matters from a private citizen, particularly an attorney representing an

adverse client who stands to benefit from a conveniently timed criminal investigation.

173.    Defendant Hogrefe improperly asked Defendant Maestas to investigate Plaintiff

and find evidence against her.

174.    Defendant Hogrefe had offered to use his office in inappropriate ways at other

times.

175.    Defendant Autio began an internal investigation into Plaintiff with the intention of

finding wrongdoing on her part.

176.    Defendant Autio manipulated the evidence against Ms. Jaramillo and ignored

and/or encouraged perjury to support his desired result against Ms. Jaramillo.

177.    Defendant Autio knew that his actions were improper.

178.    As a result of Defendants Abuse of Process, Ms. Jaramillo suffered, and continues
    to suffer, damages.

179.

## COUNT VI: BREACH OF CONFIDENCE

### (Defendants Autio, Martinez and Hogrefe)

180.    Plaintiff reincorporates and realleges the paragraphs above as though set forth
    fully herein.

181.    Taos County policy 2-16 "Standards of Conduct" requires all employees to
    maintain confidentiality regarding employees, discussing confidential information
    with unauthorized personnel and the dissemination of confidential information.

182.    Plaintiff has the reasonable expectation that her personnel matters will not be
    discussed with others.

183.    Plaintiff has the reasonable expectation that her personnel matters will not be
    discussed with the press.

184.    Publicity of a personnel investigation would be highly offensive to a reasonable
    person.

185.    Publicity of a pre-file criminal investigation would be highly offensive to a
    reasonable person.

186.    Defendants knew, or should have known, that disclosing Plaintiff's investigations
    was a breach of Plaintiff's privacy.

187.    As a result of Defendants' breach of confidence, Plaintiff suffered and continues
    to suffer, damages.

## <u>COUNT VII: VIOLATION OF IPRA</u>

### (Defendant Taos County)

188.     Plaintiff reincorporates and realleges the paragraphs above as though set forth
fully herein.

189.     New Mexico Inspection of Public Records Act NMSA § 1978  14-2-1(A).
provides that, with only very limited exceptions, "[e]very person has a right to inspect
public records of this state."

190.     NMSA § 1978  14-2-12 (A)(2) An action to enforce the Inspection of Public
Records Act may be brought by: a person whose written request has been denied.

191.     NMSA § 1978  14-2-12(D) The court shall award damages, costs and reasonable
attorneys' fees to any person whose written request has been denied and is successful
in a court action to enforce the Inspection of Public Records Act.

192.     Plaintiff lawfully requested inspection of public records.

193.     Defendant unlawfully failed to produce all records for inspection from Plaintiff's
IPRA requests #1-5.

194.     Defendants IPRA responses changed each time they responded, randomly
complying or not complying with statutory notice requirements.

195.     Defendants unlawfully treated Plaintiff's IPRA requests differently and
unlawfully withheld records because of Plaintiff legal claims.

196.     Defendant Autio unlawfully began to dictate what Plaintiff would receive, to
obstruct her inspection of records and to process her IPRA requests himself.

197.    As a result of Defendants' violation, Plaintiff suffered, and continues to suffer, damages.

### COUNT VIII: VIOLATION 28 U.S.C. § 1983: DEFAMATION

### (Defendant Hogrefe in his individual capacity)

198.    Plaintiff reincorporates and realleges the paragraphs above as though set forth fully herein.

199.    Plaintiff has a well-established liberty interest in her reputation.

200.    Plaintiff was placed on Administrative leave pending internal investigation.

201.    Defendant Hogrefe unethically participated in an improper criminal investigation into Plaintiff with Defendant Maestas, who he knew stood to gain financially from this.

202.    Defendant Hogrefe knew or should have known, that the allegations against Plaintiff were false, and/or had already been determined by the Attorney General that no action was appropriate.

203.    Defendant Hogrefe provided a statement to the press which communicated that Plaintiff was being investigated for extortion and/or misconduct.

204.    This statement resulted in a newspaper article being published which implied that Plaintiff had committed a crime.

205.    Plaintiff's employment with Defendants was terminated on November 5, 2020.

206.    Plaintiff has been denied other employment because of these defamatory reports about her.

207.    Pursuant to 42. U.S.C. §1988, Plaintiff is entitled to recover Attorney's Fees and Costs related to the enforcement of her constitutional rights.

208.     As a result of Defendant Hogrefe's violations, Plaintiff suffered, and continues to suffer, damages.

### COUNT IX: VIOLATION 28 U.S.C. § 1983: DUE PROCESS

#### (Defendant Hogrefe in his individual capacity)

209.     Plaintiff reincorporates and realleges the paragraphs above as though set forth fully herein.

210.     Plaintiff has a well-established liberty interest in her name and reputation.

211.     Defendant Hogrefe's statements about Plaintiff being accused of extortion and misconduct are sufficiently severe to injure her reputation.

212.     Defendant Hogrefe's alleged criminal investigation is allegedly still active and has resulted in additional defamatory news articles, up to and including September 2021.

213.     These allegations about Plaintiff are false.

214.     As of the date of this filing, Plaintiff still has no knowledge of what the allegations against her are, nor have any charges against her ever been filed

215.     Plaintiff has been denied the ability to defend herself or her reputation against this "phantom" investigation and anyone who does an internet search for Plaintiff learns that she has been accused of criminal acts.

216.     In August 2021, Plaintiff attempted to inspect the alleged criminal investigation file under IPRA.

217.     Just after Defendant Hogrefe was asked to produce these records, another defamatory news story was run, inaccurately linking Plaintiff's employment

investigation with the criminal investigation, and claiming that the latter was still active.

218.    To date,  Defendant Hogrefe has not produced this investigation file, in violation of state law

219.    Pursuant to 42. U.S.C. §1988, Plaintiff is entitled to recover Attorney's Fees and Costs related to the enforcement of her constitutional rights.

220.    As a result of Defendant Hogrefe's actions, Plaintiff suffered, and continues to suffer, damages.


## COUNT IX: VIOLATION 28 U.S.C. § 1983: MALICIOUS PROSECUTION

### (Defendant Hogrefe in his individual capacity)


221.    Plaintiff reincorporates and realleges the paragraphs above as though set forth fully herein.

222.     Defendant Hogrefe began a criminal investigation into Plaintiff

223.    This criminal investigation lacked probable cause.

224.    Defendant Hogrefe told the press about this investigation and what the allegations involved.

225.    Defendant Hogrefe discussed this investigation with Defendant Maestas, an attorney he knew was adverse to Plaintiff.

226.    Defendant Hogrefe improperly exchanged text messages with Defendant Maestas, and even asked Maestas to get him information on Plaintiff.

227.    Starting an investigation into a private citizen on the basis of rumors and accusations by a party with a clear conflict of interest is not proper.

228.    Defendant Hogrefe also had a conflict of interest in this matter, but opened an official investigation immediately upon the word of Defendant Maestas.

229.    Defendant Hogrefe sought to open this investigation to harm Plaintiff's reputation and to help Defendant Maestas get more money out of the County.

230.    Pursuant to 42. U.S.C. §1988, Plaintiff is entitled to recover Attorney's Fees and Costs related to the enforcement of her constitutional rights.

231.    As a result of Defendants illegal actions, Plaintiff suffered, and continues to suffer, Damages.


## COUNT X: VIOLATION 28 U.S.C. § 1985(2) and (3)

### (Defendant Hogrefe in his individual capacity)

232.    Plaintiff reincorporates and realleges the paragraphs above as though set forth fully herein.

233.    Defendants Hogrefe and Maestas conspired to deter, intimidate and/or threaten Plaintiff from enforcing her legal rights, and to impede, hinder, obstruct or defeat the due course of justice in any State, with intent to deny her equal protection of the laws, injure her  or her property for enforcing, or attempting to enforce her rights and equal protection of the laws.

234.    Defendants Hogrefe and Maestas conspired for the purpose of impeding, hindering, obstructing, or defeating in any manner, the due course of justice in any State or Territory, with intent to deny Plaintiff equal protection of the laws.

235.   Defendants Hogrefe and Maestas conspired together against Plaintiff in private text messages.

236.   Defendants conspiracy was to cause a criminal investigation into Plaintiff

237.   Text messages or other communications with an opposing party attorney or any private citizen which seek to find any kind of criminality against another private citizen is not the proper way to commence a legitimate criminal investigation.

238.   Defendants knew that their actions were improper.

239.   Defendants conspiracy caused a newspaper article which defamed Plaintiff and caused permanent damage to her reputation.

240.   Defendants conspiracy has cost Plaintiff employment opportunities.

241.   Pursuant to 42. U.S.C. §1988, Plaintiff is entitled to recover Attorney's Fees and Costs related to the enforcement of her constitutional rights.

242.   As a result of Defendants illegal actions, Plaintiff suffered, and continues to suffer, Damages.

## COUNT XI: CIVIL CONSPIRACY

### (Defendant Hogrefe and Defendant Maestas)

243.   Plaintiff reincorporates and realleges the paragraphs above as though set forth fully herein.

244.   Defendants Hogrefe and Maestas conspired to dig up, invent, or otherwise fabricate criminal allegations against Plaintiff.

245.   Filing a false police report and/or defamation is unlawful.

246.     Defendant Maestas was, at all pertinent times, the legal counsel for a party adverse to Plaintiff.

247.     The "witness" mentioned in support of this conspiracy was also a client, or former client of Defendant Maestas.

248.     Defendant Maestas was actively in settlement negotiations with Taos County at the time of this conspiracy.

249.     Defendant Maestas used this conspiracy and the allegation of criminal investigation to benefit himself and his client.

250.     Defendant Hogrefe and Maestas' conspiracy caused publication of defamatory newspaper stories which were published in multiple cities and online for the world to view.

251.     As a result of Defendants' illegal acts, Plaintiff suffered, and continues to suffer, damages.

**<u>Prayer for Relief</u>**

Wherefore, Ms. Jaramillo respectfully requests:

A.  A trial by a jury of 6 persons on all issues so triable;

B.  Judgement against Defendants;

C.  Statutory Damages under the NMHRA;

D.  Statutory Damages under the NMWPA;

E.  Compensatory Damages;

F.  Punitive Damages;

G.  Injunctive relief;

H.  Any other damages available to Plaintiff;

I.   Attorney's fees and costs;

J.   Pre and post judgement interest;

K.  Any other relief as may be deemed just and equitable.

Respectfully Submitted.

Heather Burke
Attorney at Law
1000 Cordova Place #24
Santa Fe, NM 87505
(505) 428-9424
heather@hburkelaw.com